**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| OUMER SALIM, *on behalf of himself* *and others similarly situated* | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No: _____ |
| JPAY, INC., | § § | |
| Defendant, | § § § | |

_____

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Oumer Salim ("Salim" or "Plaintiff") and files this Class Action Petition against JPay, Inc. ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, as follows:

### I.     CASE SUMMARY

Defendant JPay provides video conferencing services to prisons throughout the country. Family and friends who would otherwise be unable to visit an incarcerated person can use the service offered through JPay to have a "Video Visitation." JPay charges for these Video Visitation sessions in 30-minute increments. However, complaints from around the country indicate families and friends of inmates consistently complain that video sessions do not last the entire 30 minutes session. Plaintiff brings this action on behalf of himself and all natural persons who, after December 1, 2009, paid a fee to JPay for a 30-minute Video Visitation session and received less

than a 30-minute session, for any reason, to recover for JPay's failure to deliver the service as promised and paid for.

## II.      PARTIES

1.      Oumer Salim is a citizen of Texas and resides in Colleyville, Texas. Mr. Salim purchased Video Visits through JPay to communicate with an inmate in Noble Correctional Institution in Ohio.

2.      JPay, Inc. is a provider of corrections-related services in more than thirty states across the country, as well as a provider of Video Visits for individuals in community corrections. JPay is a subsidiary of a company who has its principal place of business in Denton County, Texas, which is in this District.

## III.     JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

Federal diversity jurisdiction exists over this removed action pursuant to 28 U.S.C. §1332(d).   Section 1332(d) provides that the United States District Courts have original jurisdiction over any class action: (1) involving a plaintiff class of 100 or more members; (2) in which the matter in controversy exceeds (in the aggregate) the sum or value of $5,000,000, exclusive of interest and costs; and (3) where at least one member of the plaintiff class is a citizen of a State different from any defendant. *See* 28 U.S.C. 1332(d)(2)(A) & 5(B).

### A.  The Putative Class Consists of Over 100 Members

Plaintiff is requesting class certification for a class defined as: *All natural persons who, after December 1, 2009, paid a fee to JPay for a 30-minute Video Visitation session and received less than a 30-minute session, for any reason*.   Based upon information exchanged between the parties, this Class would include hundreds of thousands of people.

### B.  Diversity Jurisdiction Exists as Required by CAFA

Diversity of citizenship exists between JPay and putative members of the class.  Diversity of citizenship exists if "any member of a class of plaintiffs" has diverse citizenship from at least one defendant. 28 U.S.C. §1332(d)(2)(A).  Plaintiff is a citizen of Texas, while Defendant is a citizen of Florida and Delaware.  CAFA only requires minimum diversity, so the diversity of citizenship requirement is met because at least one member of the putative class, Salim, is a citizen of a state different from the states in which Defendant is a citizen.

**C.  The Amount in Controversy Exceeds $ 5 million**

Under CAFA, the amount in controversy requirement is satisfied if the claims of the putative class exceed, in the aggregate, $5,000,000, exclusive of interest and costs. 28 U.S.C. §1332(d)(2).  Salim's estimated individual losses are approximately $ 297.00.  Based upon the several hundred thousand individuals included in the putative class and their expected range of losses, both greater and less than Salim's losses, the amount in controversy exceeds $ 5 million.

## IV.    VENUE

Venue is proper in the Eastern District of Texas because Defendant's parent corporation resides in this District and is subject to the personal jurisdiction of this court.  28 U.S.C. § 1391(b)(1).

## V.    FACTUAL ALLEGATIONS

Family members or friends of prison inmates often are unable to travel for in person prison visits and need to communicate with inmates by way of video-phone conferencing known as video visitation. Currently, more than 500 facilities in 43 states and the District of Columbia are experimenting with video visitation. The video visitation process, in general, works as follows:



JPay provides such a service, known as "Video Visitation," which allows family or friends of an inmate to communicate face-to-face with the inmate from the comfort of their own home.

In the last decade, JPay has begun offering video conferencing in many prison systems in the United States. Today, hundreds of thousands of inmates and their friends and families depend on JPay to provide video-phone communication.

JPay charges the user a *per visit* fee rather than *per minute* fee, even though the visits are purchased in *30-minute increments*. JPay's website describes its Video Visitation service as follows:

### The next best thing to being there

There's nothing quite like seeing your loved one in person. Visiting them at their correctional facility, however, can often be difficult; the prison or jail may be far away, and the security procedures can be invasive. Sometimes there's just no way to be there in person.

When physical visits are impossible or inconvenient, JPay's Video Visitation lets you talk face-to face with your incarcerated friend or relative from the comfort of your own home. When you can't be there, this is the next best thing.

Family members or friends must pay a fee of between $9 to $15 for an alleged *30-minute* Video Visitation session through JPay. In truth, consumers that pay JPay the fee *do not receive the entire 30 minutes* of communication with their friend or family member. Complaints from around the country indicate families and friends of inmates consistently complain that video sessions *do not* last the entire 30 minutes session.  At the Noble Correctional Institution in Ohio,

where Plaintiff's brother is incarcerated, JPay charges consumers, including Plaintiff, $9.90 per *30-minute* Video Visitation session.



Additionally, JPay's website includes a page that purports to represent "JPay Terms of Service." Plaintiff was not affirmatively presented with, and therefore did not review, the "JPay Terms of Service" prior to scheduling his Video Visitation session through JPay. Even assuming arguendo, that JPay's Terms of Service ever became part of a contract between Plaintiff and JPay, JPay breached the terms of that contract because JPay failed to provide Plaintiff with the *30-minute* video session he paid for.

Plaintiff's brother is incarcerated in the Noble Correctional Institution ("Noble") in Caldwell, Ohio. For the last several years, Plaintiff has routinely, about twice each month,

scheduled Video Visitation sessions with his brother using JPay. Plaintiff spent $9.90 for each so-called 30-minute Video Visitation session.







JPay is the only method for video-phone communication with an inmate at Noble, therefore

Plaintiff was offered no other option but to use JPay to communicate with his brother via video-phone. At least two times per month since April 2014, Plaintiff purchased approximately 30 Video Visitation sessions through JPay. Out of the approximately 30 sessions, **none** of the sessions actually lasted for 30 minutes, so Plaintiff did not receive the benefit of the bargain (30-minute video session) for which he paid.

## VI.      CLASS ACTION ALLEGATIONS

Description of the Class: Plaintiff brings this class action on behalf of himself and a Class, defined as follows:

> All natural persons who, after December 1, 2009, paid a fee to JPay for a 30-minute Video Visitation session and received less than a 30-minute session, for any reason.

Excluded from the Class are JPay's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, judicial officer or arbiter presiding over this matter and the members of their immediate families and judicial staffs.

2.      Numerosity: The proposed Class is so numerous that individual joinder of all members is impracticable.

3.      Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

> a.      Whether JPay breached its express warranty that each Video Visitation session would last for 30 minutes;
>
> b.      Whether JPay intentionally manipulates the 30-minute session to provide less than 30 minutes of video time;
>
> c.      Whether JPay engaged in unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices

in the conduct of any trade or commerce;

d.      Whether JPay breached its contracts with Plaintiff and the Class;

e.      Whether JPay breached the implied covenant of good faith and fair dealing with Plaintiff and the Class;

f.      Whether JPay was unjustly enriched through its dealings with Plaintiff and the Class;

g.      Whether JPay acted unconscionably through its dealings with Plaintiff and the Class;

h.      Whether JPay should be ordered to pay actual damages to Plaintiff and the other members of the Class;

i.      Whether JPay should be ordered to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

j.      Whether JPay should be ordered to pay statutory damages, as provided by the New York Deceptive Trade Practices Act, to Plaintiff and the other members of the Class; and

k.      Whether JPay should be ordered to pay attorneys' fees and costs.

4.      <u>Typicality:</u> Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by the actions of JPay.

5.      <u>Adequacy of Representation:</u> Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

6.      <u>Superiority of Class Action:</u> Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of JPay's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

## VII.    CLAIMS FOR RELIEF

### A.    Breach of Express Warranty

1.      Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

2.      Plaintiff seeks recovery for himself and the Class for Defendant's breach of express warranty under the laws of the State of New York.

3.      JPay expressly warranted that each Video Visitation session would last for 30 minutes.

4.      As alleged herein, the Video Visitation sessions did not last for 30 minutes.

5.      To the extent any notice is deemed required, Defendant has received sufficient and timely notice of the breaches of warranties alleged herein.

6.      Defendant's affirmations and promises became part of the "basis of the bargains" between Plaintiff and the Class members on the one hand, and JPay on the other hand.

7.      As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff and the Class members have sustained damages and other losses in an amount to be determined at trial.

### B.    Violation of the New York Deceptive Trade Practices Law GBL § 349

1.      Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

2.      In committing the acts alleged above, Defendant engaged in unfair, deceptive, untrue or misleading acts by omitting, failing to disclose or adequately disclose,

and/or concealing the material fact that the video session would not last for the entire 30-minute period.

3.      These above-described unlawful, unfair, and fraudulent business practices by Defendant present an ongoing threat to Plaintiff and the putative Class. Plaintiff is informed and believes and thereon alleges that Defendant has systematically perpetrated deceptive and unfair practices upon members of the public and has intentionally deceived Plaintiff and the Class.

4.      JPay's violation of GBL § 349 has caused Plaintiff and the Class to suffer injury including, inter alia, lost money. Plaintiff and the Class would not have purchased Video Visitation sessions through JPay based in material part on Defendant's material misrepresentations of the 30-minute length of the Video Visitation session. Had Plaintiff and the Class known the truth about JPay's Video Visitation service, they would not have purchased JPay's Video Visitation service and/or paid as much for the service as they paid.

5.      Furthermore, Plaintiff and the Class have already paid, and will be required to pay in the future, Video Visitation fees that would not have paid if Defendant had accurately disclosed that the Video Visitation sessions would not last 30 minutes or if Defendant had charged Plaintiff and the Class on a per minute (rather than per session) basis.

6.      JPay's deceptive practices were consumer-oriented. JPay engaged in the above-referenced conduct knowing that its Video Visitation sessions sold to consumers would not, in truth, last for 30 minutes and that consumers would be affected by JPay's unfair, deceptive, untrue, or misleading acts.

7.      As a direct and proximate result of JPay's violation of GBL §349, JPay has

been unjustly enriched at the expense of Plaintiff and the Class. As a result of these acts, JPay should be required to make restitution to Plaintiff and the Class or make restitutionary disgorgement of its ill-gotten profits pursuant to GBL § 349.

8.      JPay willingly and knowingly engaged in the conduct described above.

9.      Plaintiff is entitled to all applicable damages, including treble damages, injunctive relief, and attorneys' fees pursuant to GBL § 349-h.

**C.      Breach of Contract, Including Covenant of Good Faith and Fair Dealing
(On behalf of the Class)**

1.      Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

2.      Plaintiff and JPay have contracted for Video Visitation sessions, and an express or implied contract exists between the parties for this service.

3.      JPay violated, and continues to violate, the contract it has with consumers when it fails to provide 30 minutes of actual video visitation time.

4.      Under the laws of the states where JPay does business, good faith is an element of every contract. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executive contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

5.      Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may

consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

6.      JPay violated the covenant of good faith and fair dealing by failing to provide consumers with the 30 minutes of video visitation time for which they paid.

7.      JPay willingly engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing revenue from Plaintiff and other members of the Class. These practices were not authorized by the contract, were not within JPay's discretion under the contract, and were outside the reasonable expectations of Plaintiff and the Class members.

8.      Plaintiff and members of the Class have performed all, or subsequently all, of the obligations imposed on them.

9.      Plaintiff and members of the Class have sustained damages as a result of JPay's breach of the covenant of good faith and fair dealing.

10.     Plaintiff and members of the Class have no adequate remedy at law.

### D.      Unjust Enrichment
### (On behalf of the Class)

1.      Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

2.      Plaintiff, on behalf of himself and the Class, asserts a common law claim for unjust enrichment.

3.      JPay manipulates the clock to provide consumers with less than the 30

minutes of video visitation time they paid for.

4.      JPay knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, JPay acted with conscious disregard for the rights of Plaintiff and members of the Class.

5.      As a result of JPay's wrongful conduct as alleged herein, JPay has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

6.      JPay's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

7.      Under the common law doctrine of unjust enrichment, it is inequitable for JPay to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of transfer fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. JPay's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

8.      The financial benefits derived by JPay rightfully belong to Plaintiff and members of the Class. JPay should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by it. A constructive trust should be imposed upon all wrongful or inequitable sums received by JPay traceable to Plaintiff and the members of the Class.

9.      Plaintiff and members of the Class have no adequate remedy at law.

### E.      Unconscionability
### (On behalf of the Class)

1.      Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein and, to the extent necessary, plead this cause of

action in the alternative.

2.     JPay's policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

    a.  JPay employs deceptive marketing representations and omissions to force consumers away from free money order transfer services and toward exorbitantly-priced JPay electronic money transfer services.

    b.  JPay intentionally slows down free money order transfers, which it is required to provide pursuant to contracts with Illinois, Louisiana, and other states, to force consumers away from free money order transfer services and toward exorbitantly-priced JPay electronic money transfer services.

    c.  JPay assesses service fees for electronic money transfers that were used, in part, to pay kickbacks and commissions to prisons and prison officials.

3.     Considering the great business acumen and experience of JPay in relation to Plaintiff and the Class, a great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract terms at issue, the oppressiveness of the contract terms, the commercial unreasonableness of the contract terms, the purpose and effect of the contract terms, the allocation of the risks between parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

4.     Plaintiff and the Class members have suffered damages as a result of JPay's unconscionable policies and practices as alleged herein.

### F.     Injunctive Relief

1.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

2.     Permanent and irreparable injury will result unless JPay is permanently

stopped from charging for 30-minute Video Visitation sessions while not providing the actual 30 minutes of communication. Accordingly, Plaintiff and the Class seek a permanent injunction prohibiting this practice.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against JPay, as follows:

1.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

2.   Ordering JPay to pay actual damages to Plaintiff and the other members of the Class;

3.   Ordering JPay to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

4.   Ordering JPay to pay statutory damages, as provided by applicable NY consumer statutes, to Plaintiff and the other members of the Class; and

5.   Awarding declaratory and injunctive relief as permitted by law.

Respectfully submitted this 12th day of October 2018.

**STECKLER GRESHAM COCHRAN PLLC**

*/s/ Bruce W. Steckler*

Bruce W. Steckler
Texas Bar No. 00785039
Dean Gresham
Texas Bar No. 24027215
12720 Hillcrest Road – Suite 1045

Dallas, TX  75230
Telephone:  972-387-4040
Facsimile:  972-387-4041
bruce@stecklerlaw.com
dean@stecklerlaw.com