# Oumer Salim, et. al. v. JPay Inc.
## STIPULATION OF SETTLEMENT

This Joint Stipulation of Settlement ("Stipulation of Settlement") is made and entered into by and between Claimant OUMER SALIM ("Claimant" or "Class Representative"), on his own behalf and on behalf of the Settlement Class (as defined herein) and Respondent JPAY, INC. ("Respondent" or "JPay"), and is subject to the terms and conditions hereof and the approval of a court.  Claimant and Respondent are referenced collectively herein as "the Parties."

## BACKGROUND AND RECITALS

1.       On or about December 1, 2015, Claimant filed a Demand for Class Arbitration ("Demand"), on his own behalf and on behalf of all others similarly situated, with the American Arbitration Association (the "AAA"), in AAA Case No. 01-15-0005-8277. The AAA appointed arbitrators Faith Hochberg, William Dryer, and Major Harding (the "Panel").

2.       In the Demand, Claimant asserted, *inter alia*, breach of express warranty; violation of the New York Deceptive Trade Practices Law GBL Section 349; breach of contract, including covenant of good faith and fair dealing; unjust enrichment; unconscionability; and entitlement to injunctive relief.

3.       The Panel has not yet certified a class. Through negotiations of counsel, however, the parties have come to a settlement agreement that they believe adequately compensates the class.

4.        The Parties have agreed to resolve the claims asserted in the Demand in their entirety and have reached a tentative settlement, subject to a court's approval.  The Parties now enter into a detailed, formalized settlement agreement to submit to a court for approval.

5.       For the purposes of this Stipulation of Settlement, "Claimant Class" or "Class Member" is defined as the following:  All natural persons who, between December 1, 2009 and the date a court grants preliminary approval of this settlement, paid a fee to JPay for a 30-minute Video Visitation session and received less than a 30-minute session, for any reason.  Excluded from the Claimant Class are JPay's officers, directors, affiliates, legal representatives, employees,

successors, subsidiaries, and assigns. Also excluded from the Claimant Class are any judge, justice, judicial officer or arbiter presiding over this matter and the members of their immediate families and judicial staffs.

6.      The "Settlement Class" is all members of the Claimant Class who fail to timely and properly opt out of the settlement provided by this Stipulation of Settlement.

7.      The "Settlement Period" shall be defined as the period from, and including, December 1, 2009, through the date a court grants final approval of this Stipulation of Settlement. The Parties will request that a court, in its preliminary approval of this settlement, enjoin members of the Claimant Class from initiating or prosecuting any proceeding on any claim to be released unless and until the members of the Claimant Class have opted out of the class in the manner described below. The Settlement Class is barred from asserting any claims released herein.

8.      A "Transferable Video Visitation Credit" shall be defined as one (1) credit for a video visitation session that entitles the original recipient, or its transferee, to a video conference with an eligible incarcerated individual that can last up to thirty (30) minutes. The Transferable Video Visitation Credit expires sixty (60) days from the date it is sent out by JPay and can be transferred to any other eligible non-incarcerated individual with a JPay account (though such transfer will not alter the expiration date).

9.      Respondent denies any liability or wrongdoing of any kind associated with the claims alleged in the Demand and further denies that, for any purpose other than this settlement, this action is appropriate for class treatment.

10.     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims which exist between them arising from, or related to, the Demand. In order to achieve a full and complete release of Respondent (and the Releasees as defined in Paragraph 11) of such disputes and claims, each Class Member (which includes any legal heirs and/or successors-in-interest of each Class Member), through execution of the Stipulation of Settlement by the Class Representative, acknowledges that this Stipulation of Settlement is

2

intended to include in its effect all claims arising from, or related to, the facts and claims alleged in the Demand during the Settlement Period.

11.     It is the intention of the Parties that this Stipulation of Settlement shall constitute a full and complete settlement and release of all claims arising from, or relating to, the allegations and claims asserted in the Demand, attached hereto as Exhibit "A", which release shall include in its effect JPay and each of its present and former affiliates, parent companies, subsidiaries, shareholders, owners, officers, partners, directors, employees, agents, attorneys, insurers, predecessors, successors and assigns, and each and all of their respective owners, officers, partners, directors, servants, agents, shareholders, employees, representatives, accountants, insurers, and attorneys, past, present, and future, and all persons acting under, by, through, or in concert with any of them (collectively, the "Releasees").

## TERMS OF SETTLEMENT

12.     <u>Settlement Relief.</u>  Each Class Member, following submission of a timely, sworn to, and proper Claim Form, as set forth below, shall be entitled to one (1) Transferrable Video Visitation Credit.  The Transferrable Video Visitation Credit shall expire sixty (60) days after it has been sent out by JPay via electronic mail to the email address JPay has in its record for such Class Member. Further, after final approval of this Stipulation of Settlement, JPay will ensure there is a method for consumers to receive a reasonable credit for additional video visitation time, if in good faith, JPay is notified within twenty-four (24) hours by that consumer of his or her video visit, that, as a result of JPay's system, he or she did not receive the full thirty (30) minute video visitation session they paid for. Once JPay issues this reasonable credit, it will make reasonable commercial efforts to notify the consumer by phone or email that such credit has been issued.

13.     Settlement Payments and Costs of Administration:

a.     <u>Attorneys' Fees and Costs</u>:  Respondent agrees to pay attorneys' fees and costs to Class Counsel in the amount of TWO HUNDRED AND TWENTY-THREE THOUSAND DOLLARS ($223,000.00) to compensate and reimburse Class Counsel for all of the work already performed by Class Counsel in this case and all of the work

remaining to be performed by Class Counsel in negotiating and obtaining this Stipulation of Settlement, securing court approval of the settlement, administering the settlement, making sure that the settlement is fairly administered and implemented, and obtaining dismissal of the action.  Respondent will not oppose Class Counsel's request for up to $223,000.00 for attorneys' fees and costs, and Class Counsel will not request more than that amount. The amount of attorneys' fees and costs approved by the court is not a material term of this Agreement and the fact that the court approves the amount requested or a different amount will have no impact on the enforceability of this Agreement or the other terms contained herein.

       b.    <u>Enhancement Awards</u>:  Subject to approval by a court, Claimant intends to request that he be provided an enhancement award in an amount not to exceed $2,000.00 in consideration for serving as a Class Representative.  Respondent will not oppose Claimant's request, and Claimant will not request more than that amount.  Should the court approve an enhancement award to the Claimant in an amount less than that set forth herein, this fact will have no impact on the enforceability of this Agreement or the other terms contained herein.

       c.    <u>Costs of Claims Administrator</u>:  The Parties agree that a Claims Administrator is not necessary for this case because JPay has all of the requisite information for Notice and administration, and Class Counsel can easily oversee the implementation of this settlement process.

<b><u>NOTICE TO THE CLAIMANT CLASS</u></b>

14.    The Parties agree that, within thirty-five (35) business days of the later of (i) preliminary court approval of the terms and conditions of this Stipulation of Settlement, or (ii) court approval of the settlement notice to the Claimant Class, JPay will send via email, to the email addresses on file with JPay, the court-approved Notice of Class Action Settlement ("Notice") in the form attached hereto as Exhibit "B."  Attached to the Notice will be a Claim Form and Request for Exclusion Form, in the forms attached hereto as Exhibits "C" and "D," respectively.  The

4

Notice, Claim Form and Request for Exclusion Form shall be referred to collectively as a "Notice Packet."

**CLAIM PROCESS**

15.    Class Members will have thirty (30) days from the date the Notice Packets are emailed by JPay to postmark or email back to JPay's Counsel their Claim Forms, Objections, and/or Requests for Exclusion. The parties agree that if an email is returned as undeliverable, JPay shall not be required to mail hard copies of any notice forms or otherwise be required to contact the Class Member.

16.    Procedure for Objections to Settlement.    The Notice shall provide that Class Members who wish to object to the settlement must file with the court and serve on Class Counsel and Respondent's Counsel a written statement objecting to the settlement, no later than thirty (30) days after the Notice is first emailed (the "Objection Deadline Date").  No Class Member shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the settlement, and no written objections or briefs submitted by any Class Member shall be received or considered by the court at the Final Approval Hearing, unless written notice of the Class Member's intention to appear at the Final Approval Hearing, and copies of any written objections or briefs, have been filed with the court, and served on Class Counsel and Respondent's counsel on or before the Objection Deadline Date.  Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall forever be foreclosed from making any objection (whether by appeal or otherwise) to the settlement, or any aspect of the settlement, including without limitation the fairness, reasonableness, or adequacy of the proposed settlement, or any award of attorneys' fees or reimbursement of costs and expenses.

17.    Procedure for Opt-Outs from Settlement Class.  The Notice shall provide that Class Members who wish to opt out from the settlement must submit to JPay and Class Counsel a Request for Exclusion Form.  Such Request for Exclusion Form must be submitted to JPay and Class Counsel no later than thirty (30) days after the Notice is first emailed (the "Opt-Out Deadline

5

Date"). No Class Member shall be deemed to have opted out of the Settlement Class unless such Request for Exclusion Form has been submitted to both JPay and Class Counsel on or before the Opt-Out Deadline Date. Class Members who fail to submit such Request for Exclusion Forms in the manner specified above shall be deemed to be a member of the Settlement Class and be subject to all terms contained in the court approved settlement terms.

18.     <u>Certification of Non-Release of Claim</u>. The Claim Form will include within it an acknowledgement that the Class Member did not previously enter into an individual (non-class action) settlement agreement with a general release with JPay. Class Members who previously entered into a signed agreement releasing claims against Releasees are ineligible to recover from the Settlement Fund. Class Members who attest that they are not excluded on these grounds, and otherwise are eligible to recover, including that they in fact did not previously enter into such an agreement, will be allowed to recover from the Settlement.

19.     Within twenty five (25) business days of receipt by JPay of each timely-submitted and sworn to Claim Form, JPay will send a deficiency notice to the Class Members for any irregularities in the completed Claim Form, if applicable. The deficiency notice will provide the Class Members no more than twenty (20) days from the mailing of the deficiency notice to email or postmark a written response to cure all deficiencies ("Deficiency Cure Deadline"). The failure of a Class Member to timely submit a Claim Form under penalty of perjury, or timely submit a response to any deficiency notice, shall invalidate a claim and will not be considered deficiencies subject to cure, unless counsel for both parties stipulate to allow cure.

20.     All original Claim Forms shall be emailed or mailed directly to JPay at the addresses indicated on the Claim Form.

21.     Within thirty (30) business days after the Objection Deadline Date or the last Deficiency Cure Deadline (whichever is later), JPay will certify to Class Counsel which claims were timely filed, which Class Members opted out, and which Class Members will be included in the Settlement Class and issued a Transferable Video Visitation Credit ("Report Deadline").

22.     Any Class Member who does not timely submit a Claim Form, Request for Exclusion Form, or timely cure a deficiency, shall be included in the Settlement Class, but shall not be entitled to any further relief.

23.     Within forty-five (45) business days of final approval of the settlement from the Court, JPay shall be responsible for issuing the Transferable Video Visitation Credit via email to the Settlement Class with instructions on how to redeem and/or transfer the Transferable Video Visitation Credit. This communication will be through the email account associated with the Settlement Class Member's JPay account. The parties agree that it is the Settlement Class Member's duty to keep their email account updated with JPay. Consequently, if an email is returned as undeliverable, JPay shall not be required to mail hard copies notifying the Settlement Class Member of the Transferable Video Visitation Credit or otherwise be required to contact the Settlement Class Member.

## RIGHT TO RESCISSION IN THE EVENT OF EXCESS OPT-OUTS

24.     Notwithstanding any other provision of this Stipulation of Settlement, Respondent shall retain the right, in the exercise of its sole discretion, to nullify the settlement within thirty (30) days of expiration of the Opt-Out Deadline Date, if ten percent (10%) or more of the Class Members opt out of the settlement. All signatories to this Stipulation of Settlement and their counsel agree that they will not encourage opt-outs, directly or indirectly, through any means. Objective statements to Class Members, who call Class Counsel with inquiries regarding the settlement, shall not be deemed a violation of the prohibitions contained herein. In the event of such a rescission, no party may use the fact that the Parties agreed to settle this case as evidence of Respondents' liability in this lawsuit or the lack thereof or for any other purpose, including but not limited to, in support of class treatment.

25.     If Respondent elects to nullify the settlement pursuant to the forgoing paragraph, the Parties agree that on JPay's request, Claimant shall immediately dismiss the Texas Proceedings and, if dismissal is not permitted, file a joint motion to compel and reinstate the AAA arbitration

Case No. 01-15-0005-8277, so that the Parties will return to the status quo as it existed before this Stipulation of Settlement was signed.

## RELEASE BY THE CLASS REPRESENTATIVE

26.    Except as specified herein, and only if an enhancement award (of whatever amount approved by the court) is issued to the Class Representative, the Class Representative fully releases and discharges the Releasees, from any and all actions, causes of action, obligations, costs, expenses, damages, penalties, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever, now existing or arising in the future, based on any act, omission, event, occurrence, or nonoccurrence from the beginning of time to the date of execution hereof, including but not limited to any claims or causes of action arising out of or in any way relating to his use of JPay's services or which have been or could have been made in the Demand. Class Representative further acknowledges and agrees that he releases and waives any right to become, and promises not to consent to become, a class member in any case in which claims are asserted against the Releasees, including those that are related in any way to his use of JPay's services and for which claims arise from the beginning of time to the date of execution hereof.  Class Representative also acknowledges and agrees that he will not assist, or in any way participate in, any other proceeding against Releasees, except as required by law.

## RELEASE BY THE CLASS

27.    Upon final approval of the settlement by the court, the Settlement Class, and each Class Member who has not submitted a timely and valid Request for Exclusion form, will release, through the date of final approval of the settlement, the Releasees (consisting of JPay and each of its present and former affiliates, parent companies, subsidiaries, shareholders, owners, officers, partners, directors, employees, agents, attorneys, insurers, predecessors, successors and assigns, and each and all of their respective owners, officers, partners, directors, servants, agents, shareholders, employees, representatives, accountants, insurers, and attorneys, past, present, and

8

future, and all persons acting under, by, through, or in concert with any of them), from the "Released Claims."  For purposes of this settlement, the "Released Claims" are defined as:

    a.   Any and all claims, debts, liabilities, penalties, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action contingent or accrued for, arise out of, or which relate to the allegations or claims asserted in the Demand attached as Exhibit "A", including without limitation any and all claims under state and federal law for breach of express warranty; violation of the New York Deceptive Trade Practices Law GBL Section 349; breach of contract, including covenant of good faith and fair dealing; unjust enrichment; unconscionability; and injunctive relief regarding the claims in the Demand attached as Exhibit "A".

    b.   The Released Claims include any unknown claims that in anyway relate to JPay's Video Visitation service or the claims made in the Demand (attached as Exhibit "A") that the Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Releasees, or might have affected their decision not to object to this settlement. With respect to the Released Claims, the Class Members stipulate and agree that, upon final court approval of the settlement, the Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits afforded by Section 1542 of the California Civil Code, or any similar provision under federal or state law, and do so understanding the significance of that waiver.  Section 1542 provides:

        "**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**"

9

28.    Upon preliminary approval of the settlement, the Class Members shall be enjoined from filing any arbitrations, lawsuits, actions, claims, complaints, or proceedings, or from initiating other proceedings, regarding the Claims released in Paragraph 27.

## **DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL**

29.    Promptly upon execution of this Stipulation of Settlement, the Parties shall (1) stay the pending putative class arbitration in AAA Case No. 01-15-0005-8277, (2) request to stay the SDFL Case No. 16-20107-CIV; and (3) request to stay the pending Eleventh Circuit appeal in Case No. 17-12828-E.

30.    Thereafter, Class Counsel shall file a class petition with the same claims and allegations in the Demand in Dallas County or District Court in Dallas, Texas ("Texas Proceedings"). JPay shall answer this Petition and not challenge jurisdiction and venue, and not assert any affirmative defenses, including but not limited to statute of limitations. After JPay answers, the Parties shall immediately apply to the Court for the entry of a preliminary order, which would accomplish the following:

a.    The scheduling of a preliminary fairness hearing on the question of whether the proposed settlement, including payment of attorneys' fees and costs, and the Class Representative's enhancement award, should be finally approved as fair, reasonable, and adequate as to the Class Members;

b.    The certification of a settlement class for all claims;

c.    The certification of this action under Texas Rule of Civil Procedure 42 and under any applicable State or Federal rule or law, as a collective action for purposes of settlement;

d.    The approval of the proposed Notice as to form and content;

e.    The approval of the proposed Claim Form as to form and content;

f.    The approval of the proposed Request for Exclusion Form as to form and content; and

g.      Directing the emailing of the Notice, Claim Form, and Request for Exclusion Form, by electronic mail as described herein, to the Class Members.

31.     Notwithstanding the above, the Parties agree that no action taken herein is contrary to JPay's right to compel arbitration, and JPay maintains and never waives that right. Consequently, if the Court in Dallas, Texas does not approve this Stipulation of Settlement, the Parties agree that, on JPay's request, Class Representative shall immediately dismiss the Texas Proceedings and, if dismissal is not permitted, file a joint motion to compel and reinstate the AAA arbitration Case No. 01-15-0005-8277, so that the Parties will return to the status quo as it existed before this Stipulation of Settlement was signed.

## DUTIES OF THE PARTIES FOLLOWING FINAL APPROVAL

32.     Following final approval of the settlement provided for in this Stipulation of Settlement, Class Counsel will submit a proposed final order:

a.      Approving the settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

b.      Dismissing these (and any related) actions, including but not limited to, the stayed putative class arbitration (AAA Case No. 01-15-0005-8277) on the merits and with prejudice and permanently barring all members of the Settlement Class from prosecuting against Releasees, any individual or class claims that were or could have been asserted in this action, including without limitation any claims arising out of the acts, facts, transactions, occurrences, representations, or omissions set forth in the Demand or class petition in this action, through the date of the final approval of this settlement upon satisfaction of all payments and obligations hereunder.

## PARTIES' AUTHORITY

33.     The signatories hereto hereby represent that they are fully authorized to enter into this Stipulation of Settlement and bind the Parties hereto to the terms and conditions hereof.

## MUTUAL FULL COOPERATION

34.    The Parties agree to fully cooperate with each other to accomplish the terms of this Stipulation of Settlement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Stipulation of Settlement.  The Parties to this Stipulation of Settlement shall use their best efforts, including all efforts contemplated by this Stipulation of Settlement and any other efforts that may become necessary by order of the court, or otherwise, to effectuate this Stipulation of Settlement and the terms set forth herein.  As soon as practicable after execution of this Stipulation of Settlement, Class Counsel shall, with the assistance and cooperation of Respondents and their counsel, take all necessary steps to secure the Court's final approval of this Stipulation of Settlement and its settlement terms.

## NO PRIOR ASSIGNMENTS

35.    The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## NO ADMISSION

36.    Nothing contained herein, nor the consummation of this Stipulation of Settlement, is to be construed or deemed an admission of the propriety of class treatment for anything other than this settlement, or an admission of liability, culpability, negligence, or wrongdoing on the part of Respondent.  Respondent specifically denies any liability.  Each of the Parties hereto has entered into this Stipulation of Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

## NO PUBLIC STATEMENTS

37.    Claimant, Class Members, and Class Counsel agree not to make public statements or speak to the press regarding the Demand, Stipulation of Settlement, class petition in Texas, settlement, or this case. Notwithstanding the forgoing, Claimant and Class Counsel may:

(1) respond to specific questions from Class Members; or (2) as required under the terms of this Agreement, describe and explain the specific terms of the Agreement. Claimant, Class Members, and Class Counsel shall not publicize the Settlement by holding press conferences or speaking with or providing information to the media regarding this Case or Settlement. Claimant and Class Counsel agree to say nothing about the Settlement to any party who is not a signatory to this Agreement until the papers in support of preliminary approval are filed with the court.

## CONSTRUCTION

38.     The Parties hereto agree that the terms and conditions of this Stipulation of Settlement are the result of lengthy, intensive arms-length negotiations between the Parties, and that this Stipulation of Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Stipulation of Settlement.

39.     The Parties agree that this Stipulation of Settlement shall be governed by New York law, without regard to its conflict of law principles.

## CAPTIONS AND INTERPRETATIONS

40.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation of Settlement or any provision hereof. Each term of this Stipulation of Settlement is contractual and not merely a recital.

## MODIFICATION

41.     This Stipulation of Settlement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Stipulation of Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

42.     This Stipulation of Settlement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior or contemporaneous

agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

## BINDING ON ASSIGNS

43.    This Stipulation of Settlement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

## CLASS COUNSEL SIGNATORIES

44.    It is agreed that, because of the large number of Class Members, it is impossible or impractical to have each Class Member execute this Stipulation of Settlement.  The Notice, Exhibit "B" hereto, will advise all Class Members of the binding nature of the release through the date of final approval of the Settlement and such shall have the same force and effect as if this Stipulation of Settlement were executed by each Class Member.

## COUNTERPARTS

45.    This Stipulation of Settlement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties. Any copy of this Stipulation of Settlement shall function as an original.

WHEREFORE, Claimants, on their own behalf and on behalf of the Claimant Class, and Respondent, by their duly authorized agent(s), have executed this Agreement, as of the dates set forth below:

**Signature Page to Follow**

**Class Representative**

DATED: 17 APR 2018

By _____
OUMER SALIM

**Respondent**

DATED: 4/20/18

By _____
JPAY, INC.

**Approved As To Form And Content By Counsel:**

DATED: 4/18/18

By _____
Bruce Steckler, counsel to OUMER SALIM, et. al.

DATED: 4/20/18

By _____
Velvel (Devin) Freedman, counsel to JPAY, INC.

# EXHIBIT A

| | | |
|---|---|---|
| **OUMER SALIM** | § | |
| | § | **AAA CLASS ARBITRATION** |
| *Claimant,* § | | |
| | § | |
| **v.** § | | **MIAMI, FLORIDA** |
| | § | |
| **JPAY, INC.,** | § | |
| § | | |
| *Respondent.* § | | |

---

## DEMAND FOR CLASS ARBITRATION

---

Claimant O umer S alim ( "Salim" o r " Claimant") fi les t his *Demand f or A rbitration* ("Demand") against JPay, Inc. ("Respondent" or "JPay"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts an d e xperiences, an d, as t o al l o ther matters, upo n information a nd belief, including investigation conducted by his attorneys.

## I.    INTRODUCTION

1.    Family members or friends of prison inmates often are unable to travel for in person prison visits and need to communicate with inmates by way of video-phone conferencing known as video visitation.

2.    Currently, more t han 500 f acilities in 43 s tates and t he D istrict of C olumbia ar e experimenting with video visitation.

3.    The video visitation process, in general, works as follows:



4.      Seeking to profit from the exponential expansion of the nation's prison population, JPay provides, for an exorbitant fee, a service known as "Video Visitation" which allows family or friends of an inmate to communicate face-to-face with the inmate from the comfort of their own home.

5.      In the last decade, JPay has taken control of video conferencing in many prison systems in the United States.  Today, hundreds of thousands of inmates and their friends and families are captive to JPay, which is their sole means of video-phone communication—for an outrageous ransom.  These exorbitant video visitation fee falls, in large part, on the shoulders of families already struggling to survive in the absence of an incarcerated family member. The Bureau of Justice Statistics found that 86% of respondents had an annual income of $25,000 or less.[1]

6.      JPay charges the user a *per visit* fee rather than *per minute* fee, even though the visits are purchased in *30 minute increments*.

7.      JPay's website describes its Video Visitation service as follows:

## The next best thing to being there

There's nothing quite like seeing your loved one in person. Visiting them at their correctional facility, however, can often be difficult; the prison or jail may be far away, and the security procedures can be invasive. Sometimes there's just no way to be there in person.

When physical visits are impossible or inconvenient, JPay's Video Visitation lets you talk face-to-face with your incarcerated friend or relative from the comfort of your own home. When you can't be there, this is the next best thing.

8.      Family members or friends are forced to pay between $9 to $15 for an alleged *30*

---

[1] See Beck, et al., Bureau of Justice Statistics study 1993, p. 3. According to a recent U.S. Census Bureau report, among households with income less than $25,000, 62% have a computer but only 47% have high-speed Internet. See Thom File and Camille Ryan, *Computer and Internet Use in the United States: 2013* (Washington, D.C.; United States Census Bureau, November 2014), p.3. Accessed on November 2, 2015 from: https://www.census.gov/history/pdf/acs-internet2013.pdf .

*minute* JPay Video Visitation session through JPay.

9.      In truth, consumers that pay JPay the ransom *do not receive the entire 30 minutes* of communication with their friend or family member.

10.     Complaints f rom a round  the c ountry  indicate f amilies a nd f riends o f  inmates consistently complain that video sessions *do not* last the entire 30 minute session.



11.     Further, J Pay p ays ki ckbacks or  " commission"  to  the p rison of ficials an d departments that run the prisons or jails.  A typical "commission" of 10% is paid by JPay to the

correctional facility that mandates JPay's use of video visitation.

12.    This is a huge incentive to the correctional facilities that contract exclusively with JPay.  Since the facilities negotiate the contracts with JPay with the understanding that the facility will not be required to pay anything, the facility fails to carefully look at the real costs or who (the families or friends of inmates) that will be paying for the shiny new Video Visitation service.

## II.    PARTIES

13.    Oumer Salim is a citizen of Texas and resides in Colleyville, Texas. He is represented by counsel:  Bruce W. Steckler of Steckler, LLP, at 12720 Hillcrest Road, Suite 1045, Dallas, Texas 75230, and Dean Gresham of Gresham, P.C., at 2911 Turtle Creek Boulevard, Suite 1400, Dallas, Texas 75219.  Mr. Salim purchased Video Visits through JPay to communicate with an inmate in Noble Correctional Institution in Ohio.

14.    JPay, Inc. is a provider of corrections-related services in more than thirty states across the country, as well as a provider of Video Visits for individuals in community corrections. JPay maintains its headquarters at 12864 Biscayne Boulevard, Suite 243, Miami, Florida 33181.

15.    Claimant respectfully requests that this matter proceed as a class action arbitration in accordance with the Contract for Services attached hereto as Exhibit "A".  The Contract for Services provides for Arbitration pursuant to the Rules of AAA. There is no prohibition against the filing of class claims in the Contract for Services. The claims set forth herein by claimant individually, and on behalf of those similarly situated, clearly satisfy the prerequisites to a class arbitration.  Moreover, the Contract for Services provides that this matter shall be filed in Miami, Florida and governed by New York law, which permit all claims as pled.  Claimant has filed this action in compliance with the AAA Supplementary Rules for Class Arbitrations ("Supplementary Rules") and pursuant to Rule 3 requests a "Clause Construction Award" to proceed on behalf of

the class and has satisfied the preliminary filing fee requirements set forth in Rule 11.

### III.    FACTUAL ALLEGATIONS

**A.    JPay Does Not Provide the Entire 30 Minute Video Visitation Session.**

16.    JPay charges consumers for Video Sessions fees of between $9 to $15 per 30 minute session

17.    At the Noble Correctional Institution in Ohio, where Claimant's brother is incarcerated, JPay charges consumers, including Claimant, $9.90 per **30 minute** video visitation session.



18.    Additionally, JPay's website includes a page that purports to represent "JPay Terms of Service."

19.    Claimant was not affirmatively presented with, and did not review, the "JPay Terms of Service" prior to scheduling his Video Visitation session through JPay.

20.    Even assuming, *arguendo*, that JPay's Terms of Service ever became part of a contract between Claimant and JPay, JPay breached the terms of that contract because JPay failed to provide Claimant with the **30 minute** video session he paid for.

**B.    Claimant's Experience**

21.    Claimant's brother is incarcerated in the Noble Correctional Institution ("Noble") in Caldwell, Ohio.

22.    For the last several years, Claimant has routinely, about twice each month, scheduled Video Visitation sessions with his brother using Jpay.

23.    Claimant spent $9.90 for each so-called 30 minute Video Visitation session.

24.    Out of the _30_or so_ sessions purchased, *none* of the sessions actually lasted for a full 30 minutes.

25.    Jpay is the only method for video-phone communication with an inmate at Noble and Claimant was thus, forced to use JPay to communicate with his brother via video-phone.

26.    At least two times per month since April 2014, Claimant purchased approximately 30 number of Video Visitation sessions through JPay.

27.    Claimant did not receive the benefit of the bargain (30 minute video session) for which he paid.

### IV.    CLASS ACTION ALLEGATIONS

28.    <u>Description of the Class</u>:  Claimant brings this class action on behalf of himself and a Class defined as follows:

> All natural persons who paid a fee to JPay for a 30 minute Video Visitation session and received less than a 30 minute session and who agreed to arbitrate their claims with Jpay (the "Class").

29.    Excluded from the Class are JPay's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, judicial officer or arbiter presiding over this matter and the members of their immediate families and judicial staffs.

30.  <u>Numerosity</u>:  The proposed Class is so numerous that individual joinder of all members is impracticable.

31.  <u>Common Questions of Law and Fact Predominate</u>:  There are many questions of law and fact common to Claimant and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of law and fact include:

    a.  Whether JPay breached its express warranty that each Video Visitation session would last for 30 minutes;

    b.  Whether JPay intentionally manipulates the 30 minute session to provide less than 30 minutes of video time;

    c.  Whether JPay engaged in unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce;

    d.  Whether JPay breached its contracts with Claimant and the Class;

    e.  Whether JPay breached the implied covenant of good faith and fair dealing with Claimant and the Class;

    f.  Whether JPay was unjustly enriched through its dealings with Claimant and the Class;

    g.  Whether JPay acted unconscionably through its dealings with Claimant and the Class;

    h.  Whether JPay should be enjoined from engaging in the conduct described herein;

    i.  Whether JPay should be ordered to pay actual damages to Claimant and the other members of the Class;

    j.  Whether JPay should be ordered to pay punitive damages, as allowable by law, to Claimant and the other members of the Class;

    k.  Whether JPay should be ordered to pay statutory damages, as provided by the New York Deceptive Trade Practices Act, to Claimant and the other members of the Class; and

    l.  Whether JPay should be ordered to pay attorneys' fees and costs.

32.  <u>Typicality</u>:  Claimant's claims are typical of the claims of the members of the Class.

Claimant and all members of the Class have been similarly affected by the actions of JPay.

33.     Adequacy of Representation:  Claimant will fairly and adequately represent and protect the interests of the Class.  Claimant has retained counsel with substantial experience in prosecuting complex cases, including mass and class action litigation throughout the United States. Claimant and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.

34.     Superiority of Class Action:  Claimant and the members of the Class suffered, and will continue to suffer, harm as a result of JPay's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

## FIRST CLAIM FOR RELIEF
### Breach of Express Warranty

35.     Claimant re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 34 above as if fully set forth herein.

36.     Claimant seeks recovery for himself and the Class for Defendant's breach of express warranty under the laws of the State of New York.

37.     JPay expressly warranted that each Video Visitation session would last for 30 minutes.

38.     As alleged herein, the Video Visitation sessions did not last for 30 minutes.

39.     To the extent any notice is deemed required, Defendant has received sufficient and timely notice of the breaches of warranties alleged herein.

40.     Defendant's affirmations and promises became part of the "basis of the bargains" between Claimant and the Class members, on the one hand, and JPay, on the other hand.

41.     As a direct and proximate result of Defendant's breach of its express warranty, Claimant and Class members have sustained damages and other losses in an amount to be determined at trial.

8

## SECOND CLAIM FOR RELIEF
## Violation of the New York Deceptive Trade Practices Law GBL §349

42.     Claimant re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 34 above as if fully set forth herein.

43.     In committing the acts alleged above, Defendant engaged in unfair, deceptive, untrue or misleading acts by omitting, failing to disclose or adequately disclose, and/or concealing the material fact that **the video session would not last for the entire 30 minute period.**

44.     These above-described unlawful, unfair and fraudulent business practices by Defendant present an ongoing threat to Claimant and the putative Class.  Claimant is informed and believes and thereon alleges that Defendant has systematically perpetrated deceptive and unfair practices upon members of the public and has intentionally deceived Claimant and the Class.

45.     JPay's violation of GBL §349 has caused Claimant and the Class to suffer injury including, inter alia, lost money.  Claimant and the Class would not have purchased Video Visitation Sessions through JPay based in material part on Defendant's material misrepresentations of the 30 minute length of the video visitation session.  Had Claimant and the Class known the truth about JPay's Video Visitation service, they would not have purchased JPay's Video Visitation service and/or paid as much for the service as they paid.

46.     Furthermore, Claimant and the Class have already paid, and will be required to pay in the future, video visitation fees they would not have paid if Defendant had accurately disclosed that the Video Visitation sessions would not last 30 minutes or if Defendant had charged Claimant and the Class on a per minute (rather than per session) basis.

47.     JPay's deceptive practices were consumer-oriented. JPay engaged in the above-referenced conduct knowing that its Video Visitation sessions sold to consumers would not, in truth, last for 30 minutes and that consumers would be affected by JPay's unfair, deceptive, untrue

or misleading acts.

48.      As a direct and proximate result of JPay's violation of GBL §349, JPay has been unjustly enriched at the expense of Claimant and the Class.  As a result of these acts, JPay should be required to make restitution to Claimant and the Class or make restitutionary disgorgement of its ill-gotten profits pursuant to GBL §349.

49.      JPay willfully and knowingly engaged in the conduct described above.

50.      Claimant is entitled to all applicable damages, including treble damages, injunctive relief, and attorneys' fees pursuant to GBL §349-h.

### THIRD CLAIM FOR RELIEF
### Breach of Contract, Including Covenant of Good Faith and Fair Dealing
### (On behalf of the Class)

51.      Claimant re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 34 above as if fully set forth herein.

52.      Claimant and JPay have contracted for Video Visitation sessions, and an express or implied contract exists between the parties for this service.

53.      JPay violated, and continues to violate, the contract it has with consumers when it fails to provide 30 minutes of actual video visitation time.

54.      Under the laws of the states where JPay does business, good faith is an element of every contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading

the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

55.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

56.     JPay violated the covenant of good faith and fair dealing by failing to provide consumers with the 30 minutes of video visitation time for which they paid.

57.     JPay willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing revenue from Claimant and other members of the Class.  These practices were not authorized by the contract, were not within JPay's discretion under the contract, and were outside the reasonable expectations of Claimant and the Class members.

58.     Claimant and members of the Class have performed all, or substantially all, of the obligations imposed on them.

59.     Claimant and members of the Class have sustained damages as a result of JPay's breach of the covenant of good faith and fair dealing.

60.     Claimant and members of the Class have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On behalf of the Class)**

61.     Claimant re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 34 above as if fully set forth herein and, to the extent necessary, plead this

cause of action in the alternative.

62.    Claimant, on behalf of himself and the Class, asserts a common law claim for unjust enrichment.

63.    By means of JPay's wrongful conduct alleged herein, JPay engaged in a scheme whereby it paid a portion of Video Visitation fees to prison officials in the form or commissions or kickbacks—a scheme that was unfair, unconscionable, and oppressive.

64.    JPay manipulates the clock to provide consumers with less than the 30 minutes of video visitation time they paid for.

65.    JPay knowingly received and retained wrongful benefits and funds from Claimant and members of the Class.  In so doing, JPay acted with conscious disregard for the rights of Claimant and members of the Class.

66.    As a result of JPay's wrongful conduct as alleged herein, JPay has been unjustly enriched at the expense of, and to the detriment of, Claimant and members of the Class.

67.    JPay's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

68.    Under the common law doctrine of unjust enrichment, it is inequitable for JPay to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of exorbitant transfer fees on Claimant and members of the Class in an unfair, unconscionable, and oppressive manner.  JPay's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

69.    The financial benefits derived by JPay rightfully belong to Claimant and members of the Class.  JPay should be compelled to disgorge in a common fund for the benefit of Claimant and members of the Class all wrongful or inequitable proceeds received by it.  A constructive

trust should be imposed upon all wrongful or inequitable sums received by JPay traceable to Claimant and the members of the Class.

70.     Claimant and members of the Class have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Unconscionability
### (On behalf of the Class)

71.     Claimant re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 34 above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

72.     JPay's policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

    a.  JPay employs deceptive marketing representations and omissions to force consumers away from free money order transfer services and toward exorbitantly-priced JPay electronic money transfer services.

    b.  JPay intentionally slows down free money order transfers, which it is required to provide pursuant to contracts with Illinois, Louisiana, and other states, to force consumers away from free money order transfer services and toward exorbitantly-priced JPay electronic money transfer services.

    c.  JPay assesses service fees for electronic money transfers that were used, in part, to pay kickbacks and commissions to prisons and prison officials.

73.     Considering the great business acumen and experience of JPay in relation to Claimant and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract terms at issue, the oppressiveness of the contract terms, the commercial unreasonableness of the contract terms, the purpose and effect of the contract terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

74.     Claimant and the Class members have suffered damages as a result of JPay's unconscionable policies and practices as alleged herein.

## SIXTH CLAIM FOR RELIEF
### Injunctive Relief

75.     Claimant r e-alleges  and  incorporates by r eference t he a llegations co ntained  in paragraphs 1 t hrough 34 above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

76.     Permanent and  irreparable  injury w ill r esult unl ess J pay  is per manently  stopped from charging for 30 minute Video Visitation sessions while not providing the actual 30 minutes of communication.  Accordingly, Claimant and the Class seek a permanent injunction prohibiting this practice.

## V.     REQUEST FOR RELIEF

WHEREFORE, C laimant, individually a nd o n behalf o f t he ot her members o f t he C lass proposed in this Complaint, respectfully request that the Arbitrator enter judgment in their favor and against JPay, as follows:

1.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Claimant as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

2.     Ordering J Pay to pay act ual da mages to C laimant and t he other members o f t he Class;

3.     Ordering JPay to pay punitive damages, as allowable by law, to C laimant and the other members of the Class;

4.     Ordering JPay to pay statutory damages, as provided by the Florida Deceptive and Unfair Trade Practices Act, to Claimant and the other members of the Class;

5.     Awarding declaratory and injunctive relief as permitted by law;

6.     Ordering JPay to pay attorneys' fees, costs and expenses; and

7.     All other relief the Arbitrator deems necessary.

Dated: December 1, 2015                    Respectfully submitted,


                                           */s/ Bruce Steckler*                    
                                           Bruce W. Steckler
                                           Texas Bar No. 00785039
                                           **STECKLER, LLP**
                                           12720 Hillcrest Road – Suite 1045
                                           Dallas, TX  75230
                                           Tel:   972-387-4040
                                           Fax:   972-387-4041
                                           bruce@stecklerlaw.com


                                           Dean Gresham
                                           Texas Bar No. 24027215
                                           **GRESHAM, P.C.**
2911                                             Turtle Creek Blvd., Suite 1400
Da                                          llas, Texas 75219
T                                          el:  469-916-0524
F                                          ax:  214-252-1889
                                           dgresham@greshampc.com

Video Visitation Terms of Service

Before you purchase video visitation sessions, you must read and agree to this JPay Video Visitation Terms of Service ("Terms of Service") and any future amendments.

1. NOTICE. JPay may amend this Terms of Service at any time by posting a revised version on our website. The revised version will be effective at the time we post it. In addition, if the revised version contains a Substantial Change, we will email you the Substantial Change prior to posting it on our website. We last modified this Terms of Service on May 8, 2015. In the event of an inconsistency between this Terms of Service and either JPay's Terms of Service or the JPay Privacy Policy, this Terms of Service shall control. Nothing in this Terms of Service shall be deemed to confer any third party rights or benefits.

2. SERVICE. The JPay Video Visitation Service (the "Service") lets you participate in a video session with an inmate at a correctional institution ("Client"). To participate in a video session, you must first purchase a video session with a credit or debit card (collectively "Bank Card"). You will be required to provide JPay with certain information to allow us, among other things: to verify your identity; to verify the inmate's identity; to receive appropriate Bank Card authorization; and any other information JPay's Clients shall require. Please refer to JPay's Privacy Policy for information concerning JPay's use of this information.

   You must have a webcam with a headset or speakers and a microphone to participate in a video session, or a smartphone with functionality above.

3. PROPER USE. You agree that you are responsible for your conduct and for any consequences thereof. Conduct that is inappropriate in any manner including indecent exposure will not be tolerated. If at anytime during your video session JPay or Client deems your conduct inappropriate, your video session will be subject to immediate termination without warning. Terminating your video session is at the sole discretion of JPay or Client. If your video session is terminated, you will not be refunded.

   You shall not, shall not agree to, and shall not authorize or encourage any third party to: (i) use the Service to transmit any content that is unlawful, defamatory, harassing, abusive, fraudulent, obscene, or is otherwise objectionable as reasonably determined by Client; (ii) use the Service for any fraudulent or inappropriate purpose; or (iii) act in any way that violates JPay's policies, as may be revised from time to time. Violation of any of the foregoing may result in immediate termination of your account, and may subject you to state and federal penalties and other legal consequences. JPay reserves the right, but shall have no obligation, to investigate your use of the Service in order to determine whether a violation of this Terms of Service has occurred or to comply with any applicable law, regulation, legal process or governmental request.

4. CONTENT OF THE SERVICE. JPay also reserves the right to view, record, preserve, and disclose any information as it reasonably believes is necessary to (a) detect, prevent, or otherwise address fraud or security issues for its Clients, (b) satisfy any applicable law, regulation, legal process or governmental request, (c) enforce this Terms of Service, including investigation of potential violations hereof, (d) respond to user support requests, or (e) protect the rights, property or safety of JPay and its Clients. JPay will not be responsible or liable for the exercise or non-exercise of its rights under this Terms of Service.

5. INTELLECTUAL PROPERTY RIGHTS. You acknowledge that JPay owns all right, title and interest in and to the Service, including without limitation all intellectual property rights (the "JPay Rights"), and such JPay Rights are protected by U.S. and international intellectual property laws. Accordingly, you agree that you will not copy, reproduce, alter, modify, or create derivative works from the Service. The JPay Rights include rights to (i) the Service developed and provided by JPay; and (ii) all software associated with the Service.

6. REFUNDS. You may cancel your video session at anytime prior to the video session's start time and receive a full refund less the $5.00 cancellation fee. The balance will be credited to your Bank Card within 5 business days following cancellation. If you or the inmate do not initiate the session within 5 minutes following the video session's start time, you will not receive a refund and your Bank Card will be charged the full price of the video session. Under some circumstances, an inmate may be unable to attend the video session. In such cases, JPay will issue a full refund to your Bank Card within 5 days of JPay's receipt of a written statement from Client confirming the reason the inmate could not attend the video session (i.e. lockdown, inmate movement, etc.).

7. TERMINATION. You may terminate your use of the Service with or without cause at any time by providing

written notice to JPay at the following address: 12864 Biscayne Blvd. #243, Miami, FL 33181 or via email at Support@JPay.com. If you have any video sessions remaining on your account, JPay shall refund this amount less a $5.00 cancellation fee within 5 business days following receipt of written notice.

JPay may at any time and for any reason terminate the Service, terminate this Terms of Service, or terminate your account. In the event of termination, your account will be disabled and you may not be granted access to your account or other content contained in your account although residual copies of information may remain in our system. JPay will notify you via email of any such termination, which shall be effective immediately upon JPay's delivery of such notice. If you have any video sessions remaining on your account upon such termination, JPay shall refund this amount within 5 business days following termination. Sections 3, 4, 5, 8, and 9 of this Terms of Service shall survive such termination.

8.   GOVERNING LAW.

(a) In the event of any dispute, claim or controversy among the parties arising out of or relating to this Terms of Service that involves a claim by the User for less than $10,000, exclusive of interest, arbitration fees and costs, shall be resolved by and through arbitration administered by the American Arbitration Association ("AAA") under its Arbitration Rules for the Resolution of Consumer Related Disputes. Any other dispute, claim or controversy among the parties arising out of or relating to this Terms of Service shall be resolved by and through arbitration administered by the AAA under its Commercial Arbitration Rules. The arbitrability of the dispute, claim or controversy shall likewise be determined in the arbitration. The arbitration proceeding shall be conducted in as expedited a manner as is then permitted by the rules of the American Arbitration Association. Both the foregoing Terms of Service of the parties to arbitrate any and all such disputes, claims and controversies, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(b) The arbitrator(s) shall follow any applicable federal law and New York State law in rendering an award.

(c) Unless otherwise agreed by the parties in writing, the arbitration hearings shall take place in Miami, Florida, USA.

(d) The cost of the arbitration proceeding and any proceeding in court to confirm or to vacate any arbitration award, as applicable, including, without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party or, at the discretion of the arbitrator(s), may be prorated between the parties in such proportion as the arbitrator(s) determines to be equitable and shall be awarded as part of the arbitrator's award.

9.   DISCLAIMER OF WARRANTIES AND LIMITATION OF LIABILITY. THIS SITE IS PROVIDED BY JPAY INC. ON AN "AS IS" AND "AS AVAILABLE" BASIS. JPAY MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE OPERATION OF THIS SITE OR THE INFORMATION, CONTENT, MATERIALS, PRODUCTS OR SERVICES INCLUDED ON THIS SITE. YOU EXPRESSLY AGREE THAT YOUR USE OF THIS SITE IS AT YOUR SOLE RISK AND THAT YOU ARE SOLELY RESPONSIBLE FOR THE ACCURACY OF THE PERSONAL AND PAYMENT INFORMATION THAT YOU PROVIDE.

TO THE FULL EXTENT PERMISSIBLE BY APPLICABLE LAW, JPAY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. JPAY DOES NOT WARRANT THAT THIS SITE, ITS SERVICES OR E-MAIL SENT FROM JPAY ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. JPAY (AS WELL AS ITS OFFICERS, DIRECTORS, EMPLOYEES, AFFILIATES AND STOCKHOLDERS) WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, ANY CREDIT CARD COMPANY'S NON-AUTHORIZATION OF A USER'S BANK CARD PAYMENT, ANY GOVERNMENT ENTITY'S NON-ACCEPTANCE OF A LETTER FROM A USER USING THIS SITE, FOR DISRUPTIONS IN SERVICE ON THIS SITE, OR FOR ERROR, DELAY OR MIS-DELIVERY OF A LETTER, REGARDLESS OF THE CAUSE, INCLUDING (WITHOUT LIMITATION) DIRECT, INDIRECT, INCIDENTAL, PUNITIVE AND CONSEQUENTIAL DAMAGES.

CERTAIN STATE LAWS DO NOT ALLOW LIMITATIONS ON IMPLIED WARRANTIES OR THE EXCLUSION OR LIMITATION OF CERTAIN DAMAGES. IF THESE LAWS APPLY TO YOU, SOME OR

Case 4:18-cv-00730-ALM-KPJ     Document 13-1     Filed 02/26/19     Page 34 of 47 PageID #: 115

ALL OF THE ABOVE DISCLAIMERS, EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU, AND YOU MIGHT HAVE ADDITIONAL RIGHTS.

# EXHIBIT B

## <u>NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, YOUR RIGHTS, AND OPTIONS FOR YOU TO CONSIDER</u>

*Oumer Salim, et. al., v. JPay. Inc.*
County of_____

*A court authorized this notice. This is not a solicitation. This is not a lawsuit against you and you are not being sued. However, your legal rights are affected whether you act or don't act.*

***IMPORTANT: YOU ARE MOST LIKELY ENTITLED TO A FREE TRANSFERABLE VIDEO VISITATION CREDIT IF THE COURT APPROVES A CLASS SETTLEMENT AND YOU FOLLOW THE CLAIMS PROCEDURE EXPLAINED BELOW***

**If you paid a fee to JPay for a 30-minute Video Visitation session and received less than a 30-minute session, for any reason, at any point between December 1, 2009, and the [DATE Court gives preliminary approval], THEN YOU MAY RECEIVE A FREE TRANSFERABLE VIDEO VISITATION CREDIT FROM A CLASS ACTION SETTLEMENT.**

**A Transferable Video Visitation Credit** constitutes one (1) credit for a video visitation session that entitles the original recipient, or its transferee, to a video conference with an eligible incarcerated individual that can last up to thirty (30) minutes. The Transferable Video Visitation Credit expires sixty (60) days from the date it is sent out by JPay and can be sold or transferred to any other eligible non-incarcerated individual with a JPay account (though such transfer will not alter the expiration date).

**IMPORTANT: YOU MUST SIGN & MAIL THE ENCLOSED CLAIM FORM ON OR BEFORE THE DEADLINE, [DATE], TO RECEIVE YOUR FREE TRANSFERABLE VIDEO VISITATION CREDIT.**

***PLEASE READ THIS NOTICE CAREFULLY.***

1

## Table of Contents

I. What is the purpose of this Notice?...................................................................    Page 3

II. Why does Plaintiff seek settlement approval? ....................................................    Page 3

III. What is JPay's position on settlement? ............................................................    Page 3

IV. Why did I get this Notice? .............................................................................    Page 3

V. Who are the attorneys representing the parties? ................................................    Page 4

VI. What is the proposed settlement? ....................................................................    Page 4

VII. What are my rights with regard to this matter?................................................    Page 5

VIII. Additional important information ..................................................................    Page 6

IX. Who can I contact if I have further questions? .................................................    Page 6

## I. **What is the purpose of this Notice**?

The purpose of this Notice is to let you know that there is a class action lawsuit pending in the _____ of Texas, that you may be a member of the Class in that lawsuit, AND THAT YOU MAY BE ENTITLED TO A FREE TRANSFERABLE VIDEO VISITATION CREDIT AS PART OF THE SETTLEMENT OF THE LAWSUIT. The lawsuit was filed against JPay, Inc. ("JPay" or "Respondent") and alleges that JPay committed various wrongs by denying its customers a full 30-minute video visitation session. Specifically, Plaintiff asserted, *inter alia*, breach of express warranty; violation of the New York Deceptive Trade Practices Law GBL Section 349; breach of contract, including covenant of good faith and fair dealing; unjust enrichment; unconscionability; entitlement to injunctive relief, and entitlement to reasonable attorney's fees and costs.

On [date of preliminary approval], in Case No._____, The Honorable _____ held a hearing in which he/she approved the Parties' motion for an order that:

(1)     temporarily and conditionally certifies the class action for settlement purposes only;

(2)     grants preliminary approval of the proposed settlement;

(3)     grants approval of this Notice, which includes setting a schedule and procedure for filing Claim Forms, Objections, and Request for Exclusion Forms; and,

(4)     schedules a Final Fairness Determination Hearing for final approval of the settlement for [date of final approval hearing], __:__ a.m. in _____. It is not necessary for you to appear at the Final Fairness Determination Hearing unless you have timely filed an objection.

## II. **Why does Plaintiff seek settlement approval**?

Plaintiff seeks approval of the settlement because he has reached a proposed settlement with JPay that he believes to be fair, reasonable, adequate, and in the best interests of the members of the Class.

## III. **What is JPay's position on settlement**?

JPay views this settlement as a compromise to avoid protracted and expensive litigation. It is not admitting to the allegations in the case and specifically denies that any of its practices were, or are, unlawful. JPay reserves the right to object to all claims if the settlement fails for any reason. The Court file has the settlement documents with more information on the lawsuit.

## IV. **Why did I get this notice**?

You received this Notice because JPay's records indicate you may be a member of the Class. The "Settlement Class" shall consist of all "Class Members" who fail to timely and properly exclude themselves ("opt out") from the settlement. "Class Members" are defined as follows:

"All natural persons who, between December 1, 2009 and [date of preliminary approval], paid a fee to JPay for a 30-minute Video Visitation session and

3

received less than a 30-minute session, for any reason."

## V. Who are the attorneys representing the parties?

| Oumer Salim and Class Members | JPay Inc. |
|---|---|
| Bruce Steckler, Esq. | Devin "Velvel" Freedman, Esq. |
| Steckler Gresham Cochran, PLLC | Boies Schiller Flexner LLP |
| 12720 Hillcrest Road | 100 SE 2nd St. |
| Suite 1045 | Suite 2800 |
| Dallas, TX 75230 | Miami, FL 33131 |
| Phone: (972) 387-4040 | Phone: (305) 539-8400 |
| www.StecklerLaw.com | www.BSFLLP.com |

## VI. What is the proposed settlement?

The following is a summary of the settlement provisions. The specific and complete terms of the proposed settlement are stated in the Stipulation of Settlement, a copy of which is filed with the Court.

JPay has agreed to issue one (1) credit for a video visitation session to each Class Member that timely fills out a Claim Form. This credit entitles the original recipient, or their transferee, to a video conference with an eligible incarcerated individual that can last up to thirty (30) minutes. The Transferable Video Visitation Credit expires sixty (60) days from the date it is sent out by JPay and can be sold or transferred to any other eligible non-incarcerated individual with a JPay account (though such transfer will not alter the expiration date).

JPay has also agreed to ensure there is a method for consumers to receive a reasonable credit for additional video visitation time, if in good faith, JPay is notified within twenty-four (24) hours by that consumer of his or her video visit, that, as a result of JPay's system, he or she did not receive the full thirty (30) minute video visitation session they paid for.

JPay has also agreed to pay Class Counsel $223,000.00 in costs and attorneys' fees for the work performed and to be performed, in this case, and to reimburse them for costs spent to date, subject to the approval of this payment by the Court.

JPay has also agreed to pay Oumer Salim an enhancement payment in an amount not to exceed $2,000.00.

The proposed settlement consists of Class Members in the following class:

"All natural persons who between December 1, 2009 and [date of preliminary approval], paid a fee to JPay for a 30 minute Video Visitation session and received less than a 30 minute session, for any reason."

The proposed settlement shall include any claims by Class Members arising within its scope from December 1, 2009, through the date this settlement is given final approval by the Court.

4

## VII. <u>What are my rights with regard to this matter?</u>

If you fit the description of a Class Member as set forth in this Notice, you have four options. Each option has its own consequences, which you should understand before making your decision. Your rights regarding each option, and the procedure you must follow to select each option, follow.

A. <u>Option One. Participation as a Class Member.</u>

To get a Free Transferable Video Visitation Credit from the settlement, you **must** complete the enclosed "Claim Form," **sign it**, and return it via email or U.S. mail, to JPay at, [email and physical addresses].The email or letter **must be emailed and/or postmarked-on or before [DATE]**.

***It is strongly recommended that you retain proof of your timely mailing until receipt of your Transferable Video Visitation Credit***.

Class Counsel, appointed and approved by the Court for settlement purposes only, will represent you. JPay will process the Claim Form and send you the Transferable Video Visitation Credit at a later date if this settlement receives final approval. **If you fail to timely return a completed and signed Claim Form, you will not receive a Transferable Video Visitation Credit from the settlement and you will not be permitted to assert any claims based on, or related to, the allegations in the class action.**

B. <u>Option Two. You Can Exclude Yourself ("Opt Out") from the Settlement.</u>

If you do not wish to participate in or be bound by the settlement, you must email or mail to JPay, at the address provided below, the enclosed "Request for Exclusion from the Class Action Settlement" ("Request for Exclusion Form"). The email or letter **must be emailed and/or post-marked on or before [DATE]**. The Request for Exclusion Form must be signed and dated.

If you request exclusion, you will not receive a Free Transferable Video Visitation Credit from the settlement, nor will you be considered to have released your claims alleged in, or related to, the class action. If you request exclusion from the class action settlement, you may not pursue any recovery under the class action settlement. You may, however, pursue other remedies separate and apart from the class action settlement that may be available to you.

Do **NOT** return both a Claim Form and a Request for Exclusion Form. Should you do so, you will be deemed to have made a claim and your Request for Exclusion Form **will be deemed invalid.**

C. <u>Option Three. You May Object to the Settlement.</u>

If you are a Class Member, and you do not exclude yourself from the Settlement Class (opt out), you may object to the settlement before final approval of the settlement by the Court. If you choose to object to the settlement, you may enter an appearance *in propria persona* (meaning you choose to represent yourself), or through an attorney that you hire and pay for yourself.

5

In order to object to the settlement, or any portion of it, you must file and serve any such written objection on or before **[DATE]**. Objections must be filed with the Court, and served on Class Counsel and JPay's counsel by that date to be considered by the Court. If you intend to object to the settlement, but wish to receive your share of the settlement proceeds, ***you must timely return the enclosed Claim Form as indicated herein.*** If the Court approves the settlement despite any objections and you have not returned the enclosed Claim Form, you will NOT receive a Transferable Video Visitation Credit.

D. Option Four. Do Nothing.

If you are a Class Member and you do not file a claim or do not exclude yourself from the Class, you will be bound by the settlement, not receive a Transferable Video Visitation Credit, and be barred from separately pursuing the claims released by the settlement.

The judgment will bind all members of the Settlement Class who do not request exclusion. Any member who does not request exclusion may, if the member so desires, enter an appearance through his or her own lawyer.

**VIII. Additional important information**

You will get your Transferable Video Visitation Credit only if you return a signed and dated Claim Form, **emailed and/or postmarked on or before [DATE].** It is your responsibility to **ensure JPay has received** your timely Claim Form. You may contact JPay at _____ to confirm it has been timely received. It also is your responsibility to **keep a current email address on file** with JPay to ensure that you receive your Transferable Video Visitation Credit should the Court order final approval of the settlement.

**IX. Who can I contact if I have further questions?**

You may call Class Counsel listed in Section V above. **PLEASE DO NOT CALL THE COURT OR COUNSEL FOR JPAY.**

6

# EXHIBIT C

## REQUEST FOR EXCLUSION FROM CLASS ACTION SETTLEMENT

*COMPLETE THIS FORM ONLY IF YOU CHOOSE TO NOT PARTICIPATE IN THIS SETTLEMENT*

*Oumer Salim, et al. v. JPay Inc.*
County of _____; Case No. _____

**INSTRUCTIONS:**    TO OPT-OUT OF THE SETTLEMENT, YOU MUST COMPLETE, SIGN AND MAIL THIS FORM BY EMAIL OR U.S. MAIL TRASNMITTED AND/OR POSTMARKED ON OR BEFORE [DATE], ADDRESSED AS FOLLOWS:

**Email Address**          _____@JPay.com **with subject line: "Request For Exclusion Form"; or**

**Physical Address    Salim v. JPay Inc. Settlement
C/O Opt Out Department
[insert address]**

Please fill in all of the following information (type or print):

NAME (Last, First, Middle): _____

EMAIL ADDRESS:_____

STREET ADDRESS: _____

CITY, STATE, ZIP CODE: _____

FORMER NAMES (if any): _____

TELEPHONE NUMBERS: Home: _____    Work: _____

## IT IS STRONGLY RECOMMENDED THAT YOU RETAIN PROOF OF EMAILING OR MAILING THIS FORM TRANSMITTED AND/OR POSTMARKED ON OR BEFORE [DATE].

I [insert your name] _____ wish to be excluded from the Settlement Class in the case of *Oumer Salim, et. al., v. JPay Inc.,* Case No. _____.  I understand I will not receive a Transferable Video Visitation Credit from the class settlement.

I further verify that the following is true:  My name, address and other contact information are accurately set forth above.   I received and had the opportunity to read the Notice of Pendency of Class Action, Proposed Settlement, Your Rights, and Options for You to Consider that was sent to me along with this form. I understand that, by signing this form, I voluntarily choose to "opt out" of the proposed settlement of this class action.  **I understand that by opting out, I may**

1

**not accept any Transferable Video Visitation Credit allocated for me in the proposed settlement**. On the other hand, I also understand that, if I wish to assert any claims related to those set forth in this lawsuit, I shall have to do so separately. I understand that any such claims are subject to strict time limits, known as statutes of limitations, which restrict the time within which I may file any such action. I understand that I should consult with an attorney if I wish to obtain advice regarding my rights with respect to this settlement or my choice to opt out of the settlement. I have not been coerced by anyone to opt out of this class action, and I choose to opt out of my own free will.

I declare under penalty of perjury under the laws of the State of New York that the forgoing is true and correct.

Signed: _____ Date:_____

Print Name:_____

2

# EXHIBIT D

## CLAIM FORM

*Oumer Salim et. al., v. JPay Inc.*
County of _____, Case No.

INSTRUCTIONS:      **TO RECEIVE YOUR TRANSFERABLE VIDEO VISITATION CREDIT YOU MUST COMPLETE AND RETURN A COMPLETED PAGE 2 OF THIS FORM VIA EMAIL OR U.S. MAIL, ON OR BEFORE [DATE] TO EITHER:**

**Email Address**          _____@JPay.com **with subject line: "Completed Claim Form"; or**

**Physical Address**       **Salim v. JPay Inc. Settlement**
**C/O Claim Form Department**
**[insert address]**

JPay's records indicate that you paid a fee to JPay for at least one 30-minute Video Visitation session sometime between December 1, 2009 and [DATE of preliminary approval]. If (i) that information is correct, (ii) you received less than a 30-minute session (for any reason), and (iii) you would like to claim your Transferable Video Visitation Credit, please provide the information requested below and certify it is accurate under penalty of perjury.

### TO RECEIVE YOUR TRANSFERABLE VIDEO VISITATION CREDIT

**YOU MUST COMPLETE, SIGN AND RETURN THIS CLAIM FORM, TO JPAY BY EMAIL or U.S. MAIL, TRANSMITTED OR POSTMARKED ON OR BEFORE [DATE], ADDRESSED AS DETAILED ABOVE.**

IT IS VERY STRONGLY RECOMMENDED THAT YOU KEEP A COPY OF YOUR CLAIM FORM, THE SENT EMAIL, AND/OR A COPY OF THE RETURN ENVELOPE OR OTHER PROOF WHICH REFLECTS THE TIMELY EMAIL OR POSTMARK AS PROOF OF SUBMISSION OF YOUR CLAIM.

If you change your email address, it is your responsibility to update that information with JPay to ensure receipt of further notices and your Transferable Video Visitation Credit. It is also your responsibility to ensure JPay has timely received your Claim Form. You may contact JPay at _____ to ensure your Claim Form has been received.

If you are found eligible, have submitted a valid and timely Claim Form, and the class action settlement has been finally approved by the Court, a Transferable Video Visitation will be transmitted to the email address on file for your JPay account within approximately forty-five (45) days after the date of final Court approval.

1

*Oumer Salim et. al., v. JPay Inc.*
County of _____, Case No.

## RELEASE and CLAIM FORM

Upon final approval by the Court, the Settlement Class, and each Class Member who has not submitted a timely and valid Request for Exclusion form, will release, through the date of final approval of the Settlement, JPay Inc., and each of its present and former affiliates, parent companies, subsidiaries, shareholders, owners, officers, partners, directors, employees, agents, attorneys, insurers, predecessors, successors and assigns, and each and all of their respective owners, officers, partners, directors, servants, agents, shareholders, employees, representatives, accountants, insurers, and attorneys, past, present, and future, and all persons acting under, by, through, or in concert with any of them (Releasees), from any and all claims, debts, liabilities, penalties, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action contingent or accrued for, arise out of, or which relate to, the allegations or claims asserted in the lawsuit and demand for arbitration, including without limitation any and all claims under state and federal law for breach of express warranty; violation of the New York Deceptive Trade Practices Law GBL Section 349; breach of contract, including the covenant of good faith and fair dealing; unjust enrichment; unconscionability; injunctive relief; attorneys' fees and costs; and any other penalties of any nature whatsoever.

**I DECLARE UNDER PENALTY OF PERJURY** under the laws of the State of New York, that the information provided below is accurate and that I paid a fee to JPay for a 30-minute Video Visitation session on the date detailed below, and received less than a 30-minute session on the date detailed below. I further declare and acknowledge that I did not previously enter into an individual (non-class action) settlement agreement with a general release with JPay Inc. My name and contact information are set forth below. I have reviewed the Class Notice and this form, and I want to claim my Transferable Video Visitation Credit as outlined in the Class Notice and release the Releasees from all claims as outlined above.

(1) Date you purchased the video visitation:_____

(2) Date the video visitation lasted less than 30-minutes: _____

(3) Printed Name:_____

(4) Signature:_____

(5) Date:_____

2